# CHICAGO THEOLOGICAL SEMINARY *v.* ILLINOIS.

## ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Nos. 140, 265. Argued and submitted January 20, 21, 1902.—Decided February 23, 1903.

Section 5 of the act of 1855 of the General Assembly of Illinois incorporating the plaintiff provides, " That the property of whatever kind or description belonging or appertaining to said seminary shall be forever free and exempt from all taxation for all purposes whatever." Section 2 provides, " That the seminary shall be located in or near the city of Chicago." Property of the incorporation other than the seminary buildings was taxed under the general taxing law of 1872. The Supreme Court of Illinois construed the statute of 1855 as meaning that the exemption was limited to property used in immediate connection with the seminary and did not refer to other property held by the institution for investment, although the income was used solely for school purposes.

*Held,* that as the rule of the Supreme Court of Illinois in construing an act exempting property from taxation under legislative property is that the exemption must be plainly and unmistakably granted and cannot exist by implication only—a doubt being fatal to the claim—and as the construction placed on the act is not such an unnatural, strained or unreasonable construction as shows it to be erroneous, this court will affirm the judgment even though it might be otherwise construed so as to affect a total exemption.

The act incorporating the seminary also provided that " It shall be deemed a public act and be construed liberally in all courts for the purposes therein expressed."

*Held,* that such provision should not be construed as a complete overthrow of the canon of construction adopted by the Supreme Court of Illinois in regard to exemption of property from taxation.

THESE cases, between the same parties, come here by writs of error to the Supreme Court of Illinois, which held certain property of the plaintiff in error not exempt from taxation. 189 Illinois, 439.

The case No. 140 involves taxes for the year 1899, and No. 265 for the year 1900.

The plaintiff in error claims exemption under its charter passed in 1855, entitled " An act to incorporate the Chicago

Theological Seminary," a copy of which is set forth in the margin.[1]

The Supreme Court of the State held that the provision granting the exemption from taxation in section 5 referred only to property used in connection with the seminary and did not include other property which might be owned, rented or held by the seminary as an investment, although the income thereof was used solely for school purposes. Accordingly property which was not so included and which is involved in these actions was taxed under the general taxing law of the State enacted in

---

[1] SEC. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That Stephen Peet, (and twenty-three other persons, named in the act,) and their successors be and they hereby are created a body politic and corporate, to be styled " The Board of Directors of Chicago Theological Seminary," and by that name and style to remain and have perpetual succession, with full power to sue and be sued, plead and be impleaded; to acquire, hold and convey property, real and personal; to have and use a common seal; to alter and renew the same at pleasure; to make and alter a constitution and by-laws for the conducting and government of said institution, and fully to do whatever may be necessary to carry out the object of this act of incorporation.

SEC. 2. That the seminary shall be located in or near the city of Chicago. The object shall be to furnish instruction and the means of education to young men preparing for the gospel ministry, and the institution shall be equally open to all denominations of Christians for this purpose.

SEC. 3. That the board of directors shall consist of twenty-four members, nine of whom shall constitute a quorum for the transaction of business. The directors shall hereafter be elected in accordance with the provisions of the constitution under which they act, and shall hold their office until their successors are appointed.

SEC. 4. The board of directors shall have power to appoint an executive committee and such agents as they may deem necessary and such officers, professors and teachers as the government and instruction of the seminary may require, and prescribe their duties, to remove any of them for sufficient reasons, and prescribe and direct the course of studies to be pursued in the institution; also, to confer such degrees as are consistent with the object of the institution.

SEC. 5. That the property, of whatever kind or description, belonging or appertaining to said seminary, shall be forever free and exempt from all taxation for all purposes whatsoever.

SEC. 6. This act to take effect and be in force from and after its passage, and it shall be deemed a public act, and shall be construed liberally in all courts for the purposes therein expressed.

1872. In enforcing the taxation of the outside property of plaintiff in error under that act, it is claimed that the obligation of the contract contained in the act of 1855, the charter of the plaintiff in error, was impaired.

It is conceded that the charter of incorporation was duly accepted, and that acting on the faith of its provision the plaintiff in error has acquired by donation and purchase a part of the real estate on which the taxes in question were levied, and in addition has expended in the erection and purchase of buildings on the real estate owned by it an amount exceeding $200,000, and a large number of students have been and are being instructed by it in pursuance of its charter. The pieces of real estate upon which the taxes in these cases were levied were acquired by the plaintiff in error by gift or purchase, and were held by it to promote the objects for which it was incorporated, and the rentals received from such real estate are used for those purposes, although the property is not used in immediate connection with the seminary.

Mr. *John J. Herrick,* with whom *Mr. David Fales* was on the brief, for plaintiff in error.

I. This court has jurisdiction to review the judgment of the state court, and, in the exercise of that jurisdiction, has power to determine the question as to the construction to be given to the provision in the charter of plaintiff in error exempting its property from taxation. *University* v. *People,* 99 U. S. 309; *Asylum* v. *New Orleans,* 105 U. S. 362; *State Bank of Ohio* v. *Knoop,* 16 How. 378; *Home of the Friendless* v. *Rouse,* 8 Wall. 430; *The Washington University* v. *Rouse,* 8 Wall. 439; *Wilmington Railroad* v. *Reid,* 13 Wall. 266; *Humphrey* v. *Pegues,* 16 Wall. 244; *Pacific Railroad Co.* v. *Maguire,* 20 Wall. 36.

The determination of the Federal question presented, involves the decision of the question as to the proper construction of the exemption-provision of the charter of plaintiff in error, and this court will, therefore, determine for itself, in the exercise of its appellate and revisory jurisdiction, the question of construction presented, irrespective of the decision made by the state Supreme Court. *Jefferson County Bank* v. *Skelly,*

1 Black, 443; *Bridge Proprietors* v. *Hoboken*, 1 Wall. 144; *Delmar* v. *Insurance Co.*, 14 Wall. 668; *Houston & Texas Central R. R. Co.* v. *Texas*, 177 U. S. 66; *Columbia Water Power Co.* v. *Columbia Electric Street Railway Co.*, 172 U. S. 475, 487.

In both the cases before the court, the state Supreme Court expressly decided the Federal question involved adversely to the plaintiff in error, and such decision was necessary to the judgment rendered.

Although its two previous decisions, (*People* v. *Chicago Theological Seminary*, 174 Illinois, 177, and *Chicago Theological Seminary* v. *People*, 189, Illinois, 439,) were referred to by the state Supreme Court, in the opinion in No. 265, as controlling on the question, the judgments in those cases were not in the record, and the decisions were referred to, not as *res adjudicata* but only as previous decisions of the same court on the particular question, binding on it under the doctrine of *stare decisis* It also appears from the opinion in *People* v. *Chicago Theological Seminary*, 174 Illinois, 177, that the particular case was reversed and remanded by the state Supreme Court "for further proceedings in accordance with the views herein (in the opinion) expressed," and for that reason, not being a final judgment, it was not subject to review by this court. *Brown* v. *Baxter*, 146 U. S. 619; *Rice* v. *Sanger*, 144 U. S. 197; *Johnson* v. *Keith*, 117 U. S. 199.

It also appears from the record in No. 140 that both at the time of the judgment in the County Court and of the decision by the state Supreme Court in No. 265, a writ of error had been sued out from this court to review the judgment, and the case was pending in this court.

II. The provision in the charter of plaintiff in error exempted from taxation the property in question, and, for that reason, the law under which the taxes were levied, impaired the obligation of the contract and the judgment should, therefore, be reversed.

The sole question presented by the decision of the state Supreme Court is: To what did the words "said seminary" in the exemption provision refer—to the institution incorporated

by the act, or to the place where instruction was to be given—the school buildings and grounds?

The words, "said seminary," in the exemption provision, referred to the corporation created by the act, and designated in the title as the Chicago Theological Seminary, and not to the school buildings and grounds, as held by the state Supreme Court, and this being so, the exemption provision indisputably exempted from taxation the property against which the judgments were rendered.

The first mention of "the seminary" in the act is in the title, "an act to incorporate the Chicago Theological Seminary." It is well settled that the title of an act may properly be referred to to ascertain the legislative intention. There can be no room for question that this first mention of the "Chicago Theological Seminary" referred to the institution incorporated by the act, and not "to the property," the school buildings, etc. *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Smythe* v. *Fiske*, 23 Wall. 374; *Heirs of Emerson* v. *Hall*, 13 Pet. 409, at 413; *Bell* v. *Mayor*, 105 N. Y. 144; *President, etc., of St. Vincent's College* v. *Schaefer*, 104 Missouri, 261.

Similar corporate names are found in all the earlier charters; those creating railroad corporations, incorporated banks, etc., as well as charitable institutions, such as "the President and Board of Directors of," etc. But it was not therefore necessary or customary to always use the cumbersome full name when the corporation was referred to. Angel and Ames on Corporations, sec. 99.

On the contrary, instead of using the full corporate name, it was natural and appropriate to use the words "said seminary" to designate the incorporated institution referred to in the title of the act as "The Chicago Theological Seminary," and again in section 4 as "the seminary." *Marine Bank of Baltimore* v. *Bias*, 4 Har. & J. (Md.) 338; *Nobles* v. *Hamline University*, 46 Minnesota, 316.

This use of the shorter designation instead of the full, formal name, is illustrated in the title of the act; in the proceedings in the County Court, in the return of delinquent property and in the opinion of the Supreme Court of Illinois, in No. 140. In

fact, that the general words " the Chicago Theological Seminary " were appropriate to designate the incorporated institution is recognized in the very name itself, " the Board of Directors of the Chicago Theological Seminary."

The seminary buildings had no board of directors. The Board of Directors referred to in this corporate name as " the Board of Directors of the Chicago Theological Seminary," were the directors of the incorporated institution created by the act and referred to in its title.

The precise word " located " is frequently used in charters and other statutes as applied to corporations. At common law it was an attribute of every corporation that it had a locality. Its locality was the place where it carried on its operations— where it did business. Angel and Ames on Corporations, sec. 103 ; *Sangamon & Morgan R. R. Co.* v. *County of Morgan*, 14 Illinois, 163 ; *Bristol* v. *Chicago & Aurora R. R. Co.*, 15 Illinois, 436 ; *Charlotte National Bank* v. *Morgan*, 132 U. S. 141.

Our construction of the exemption provision is forcibly confirmed by the adjudicated cases, in which like provisions were construed, and it was held, on grounds peculiarly pertinent to the case before the court, that similar general words, " belonging to " and " the college," " the institution," " the asylum," etc., referred to the corporation created by the act, and that all the property of the corporation was, therefore, exempt. *County of Nobles* v. *Hamline University*, 46 Minnesota, 316 ; *Asylum* v. *New Orleans*, 105 U. S. 362 ; *President and Faculty of St. Vincent's College* v. *Schaefer*, 104 Missouri, 261.

If the meaning is given to the words " said seminary," and " belonging to," in the exemption provision, which the state Supreme Court found it necessary to give to them to reach the conclusion it did, the result is that the provision, as a whole, is given an unreasonable, and, in fact, absurd meaning. It is familiar law that in giving construction to a statute an absurd or unreasonable meaning will not be attributed to the legislature if the language admits of any other construction. *Lau Ow Bew* v. *United States*, 144 U. S. 47, 59 ; *People ex rel.* v. *Gaulter*, 149 Illinois, 39.

The decision of the state Supreme Court, in both cases, is based on a construction of its previous decision in 174 Illinois, which gives to the exemption provision a meaning wholly different from the meaning given it by the same court in its opinion in 174 Illinois, and one which it is impossible to derive from the words of the provision.

The construction of the state Supreme Court is based wholly on the erroneous view that, instead of construing the provision of exemption in a fair and liberal sense, so as to promote the charitable object for which the corporation was formed, it should be construed narrowly by applying the rules of strict construction, and that the express provision of the charter that "this act shall be construed liberally in all courts," should be given a construction contrary to its plain intention, which would in fact render it wholly meaningless.

The rule of strict construction does not apply to exemptions in favor of charitable corporations; but such exemptions should be construed liberally, to promote the charitable object for which the corporation was created. *Yale University* v. *New Haven*, 71 Connecticut, 316; *Phillips Academy* v. *Andover*, 175 Massachusetts, 118; *Association for Colored Orphans* v. *Mayor*, 104 N. Y. 581; *People* v. *Sayles*, 50 N. Y. Supp. 8; *Long Branch Firemen's Relief Ass'n* v. *Johnson*, 62 N. J. L. 625; *Sisters of Charity* v. *Township of Chatham*, 52 N. J. L. 373; *State* v. *Fisk University*, 87 Tennessee, 233; *M. E. Church* v. *Hinton*, 92 Tennessee, 88.

Whatever the rule in the absence of an express provision in the charter—whether the rule of strict construction applies to an exemption provision in the charter of a charitable corporation or not—the legislature of Illinois, in granting this charter, expressed its intention (in section 6) not to leave the question open, by making the express provision on the subject, that the act should be "construed liberally in all courts." For cases in which under similar statutory provisions, either abolishing the rule of strict construction as to all statutes, or providing that it shall not apply to particular statutes, the rule of liberal construction was held to apply in giving a construction to criminal and penal statutes, see *Commonwealth* v. *Davis*, 12 Bush,

(Kentucky), 240; *People* v. *Soto*, 49 California, 67; *Hankins* v. *People*, 106 Illinois, 628; *Maxwell* v. *People*, 158 Illinois, 248; *Peterson* v. *Currier*, 62 Illinois App. 163.

For a case in which a similar charter provision was referred to as requiring a liberal construction of a provision in the charter of Brown University, exempting its property from taxation, see *Brown University* v. *Granger*, 19 R. I. 704.

The decision of the state Supreme Court is not only based on the erroneous view that the rules of strict construction apply, but on the wholly erroneous assumption, that under these rules "if the language (of a provision) is capable of a broader, or more restricted meaning, the latter must be adopted." Such is not the effect of the rules of strict construction, even on the assumption that they apply, but on the contrary, the words used, if "capable of" two meanings, should be given their primary and ordinary meaning in the absence of other language showing that a different meaning was intended, and such meaning as will best express the legislative intention.

The rule of strict construction does not require that if the language used "admits of two meanings," either one or the other of these two meanings "must be" adopted, or in any way change or override the other rules of construction, including the well settled rule that, where a word admits of two meanings, the natural and ordinary meaning should be adopted, in the absence of other provisions showing a contrary intention. Endlich on the Interpretation of Statutes, secs. 337, 466; *United States* v. *Winn*, 3 Summ. 209 (quoted with approval in Black on Interpretation of Statutes, p. 290); *United States* v. *Hartwell*, 6 Wall. 385, at p. 395; *Meadowcraft* v. *People*, 163 Illinois, 56, at p. 70.

The construction of plaintiff in error does not "extend the meaning of the words used, by implication," as erroneously held by the state Supreme Court.

It is proper to refer to other charters, passed by the same legislature, as an aid in ascertaining the meaning it was intended the words used in the particular provision should have. *Vane* v. *Newcombe*, 132 U. S. 220; 23 Am. & Eng. Ency. of Law, under the title "Statutes," p. 311; *Chase* v. *Lord* 77 N. Y. 1,

18; *Middleton* v. *Greeson,* 106 Indiana, 18; *Levering* v. *Philadelphia, Germantown & Norristown R. R. Co.,* 8 Watts & S. 459 at 463; *Reiche* v. *Smythe,* 13 Wall. 162.

On reference to the different charters passed by the same legislature, containing provisions for exemption from taxation, it will be seen that there are many passed at different sessions which provide by specific language for a partial exemption from taxation identical (or substantially so) with the exemption the state court holds was intended by the provision in question.

*Mr. Edwin W. Sims, Mr. Frank L. Shepard* and *Mr. William F. Struckmann,* for defendant in error, contended in their brief:

I.  This court has no jurisdiction to review the judgment of the state court.

One of the grounds for the judgment of the state court is *res judicata,* and this is not a Federal question.

It is well settled law that where there are two grounds for the judgment of a state court, only one of which involves a Federal question and the other is broad enough to maintain a judgment sought to be reviewed, this court will not look into the Federal question but will dismiss the writ of error. *Bacon* v. *Texas,* 163 U. S. 207; *Eustis* v. *Bolles,* 150 U. S. 361; *Beaupre* v. *Noyes,* 138 U. S. 397; *Rutland* v. *Central Vermont R. R.,* 159 U. S. 630; *Gillis* v. *Stinchfield,* 159 U. S. 658; *Seneca Nation* v. *Christy,* 162 U. S. 283.

The state court did not give effect to and enforce a new rule of exemption established by the revenue act of 1872. It was not necessary to determine whether the act of 1872 changed the rule of exemption; the state court did not pass on any such question. *Knox* v. *Exchange Bank,* 12 Wallace, 383; *Railroad Co.* v. *Rock,* 4 Wallace, 177–181; *St. Paul, etc., Ry. Co.* v. *Todd Co.,* 142 U. S. 282; *Railroad Co.* v. *McClure,* 10 Wallace, 511–515.

II. The charter of plaintiff in error exempts only such property owned by it as is a part of or connected with its seminary located in the city of Chicago.

The exemption clause of the charter has been construed by

the Supreme Court of Illinois in *Theological Seminary* v. *People*, 174 Illinois, 177, and this is *res judicata.*

It is the law of the State of Illinois, as it is the law adhered to by the Supreme Court of the United States, that all laws exempting property from taxation must be strictly construed. It is not to be presumed that the legislature intended to exempt property from taxation; that intention must appear affirmatively, and will be strictly construed.

As to the question of strict construction of contracts exempting property from taxation when there is involved a question of the alleged impairment of that contract contrary to the provisions of the Federal Constitution, reference is had to the following adjudicated cases: *Wilmington & Weldon R. R.* v. *Alsbrook*, 146 U. S. 279–293; *Delaware Railroad Tax*, 18 Wall. 206; *Farrington* v. *Tennessee*, 95 U. S. 679; *Ohio Life Ins. Co.* v. *Debolt*, 16 Howard, 416; *Railroad* v. *Dennis*, 116 U. S. 668; *Providence Bank* v. *Beattie*, 4 Peters, 514; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 544; *Chenango Bridge Co.* v. *Binghamton Bridge Co.*, 2 Wall. 51; *University* v. *The People*, 99 U. S. 309.

The Supreme Court of Illinois has consistently adhered to the same rule. *First M. E. Church of Chicago* v. *City*, 26 Illinois, 482; *Montgomery* v. *Wyman*, 130 Illinois, 17; *Theological Seminary* v. *The People*, 101 Illinois, 518; *In re Swigert* 123 Illinois, 267.

The title of an act furnishes little aid in the construction of the provisions of the act itself, and can only be referred to when there is a doubt as to the meaning of the act itself, and when necessary to refer to the title that fact of itself is sufficient to defeat the claim of exemption. *Hadden* v. *The Collector*, 5 Wall. 107–110; *Yazoo R. R. Co.* v. *Thomas*, 132 U. S. 174–188.

A reasonable and consistent construction of the exemption clause of the charter of plaintiff in error calls for the following definitions of the words used, viz., the verb "belong" is to be defined as "to be a part of or connected with," as is given in Webster's International Dictionary. And the word "seminary" is to be defined, according to the same authority, as "a

place of education, as a school of a high grade, an academy, college or university."

Construing the exemption clause of the charter in this manner it will exempt all property owned by the corporation which is a part of or connected with the school, which the corporation has located and is maintaining in the city of Chicago.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The Supreme Court of Illinois, by its decision in this case, has but followed its prior decision upon the same question between these parties, reported in 174 Illlinois, 177, decided in 1898. It there held that the exemption was limited to property used in immediate connection with the seminary, and did not include such property as is involved in these cases, which was not property used in immediate connection with the seminary, but was other property separate and apart therefrom, and owned or rented or held by the seminary as an investment, the income from which was nevertheless used solely for school purposes.

The rule of construction followed by the Supreme Court of Illinois in construing this act exempting property from taxation is so well established by this and other courts as scarcely to need the citation of authorities. One or two, however, from this court may be given. *Tucker* v. *Ferguson,* 22 Wall. 527; *New Orleans City & Lake Railroad* v. *New Orleans,* 143 U. S. 192, 195 ; *Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146.

The rule is that, in claims for exemption from taxation under legislative authority, the exemption must be plainly and unmistakably granted ; it cannot exist by implication only ; a doubt is fatal to the claim.

The reasoning of the Supreme Court of Illinois, 174 Illinois, *supra,* in refusing the exemption claimed, so far as relates to the property not connected with the seminary, is best stated in the language of the opinion of that court. After stating the rule of construction, as above mentioned, the court said (p. 181) :

" If, however, taking the express words of the act, and with-

out extending their meaning by implication, they may be held to include all property belonging or appertaining to the 'seminary' mentioned in the second section, or to include all the property belonging or appertaining to the corporation, and there is reasonable ground for doubt which was intended by the legislature, that doubt must be resolved in favor of the State. In other words, if the language is capable of a broad or more restricted meaning, the latter must be adopted. The second section of the charter mentioning certain property to be located in or near the city of Chicago, and which is denominated ' the seminary,' we think the words in the fifth section, ' said seminary,' refer to that particular property, and to so hold seems to do no more than to give the language of the two sections their literal and ordinarily understood meaning. To say, as is contended by appellee, that 'said seminary' was intended to mean the corporation, is to extend the meaning of those words by implication, which is not permissible.

"It is said that the only entity mentioned in the charter capable of owning property is the corporation, and therefore it could not have been intended that property belonging or appertaining to the seminary was meant by section 5. We think this position is based upon a too limited meaning of the words ' belonging or appertaining,' as here used. Of course, if the language of section 5 had been that the property, of whatever kind or description, *owned* by the said seminary shall be forever free from all taxation, etc., or if, as counsel seem to assume, the words ' belonging or appertaining ' here necessarily meant ownership of the property, then there would be force in this argument of counsel. It is undoubtedly true that the word ' belonging ' may mean ownership, and very often does. But that is not its only meaning. Webster's International Dictionary defines it : ' 2. That which is connected with a principal or greater thing ; an appendage ; an appurtenance.' He also defines the word ' pertain ' as meaning, ' to belong or pertain, whether by right of nature, appointment or custom ; to relate, as " things pertaining to life." ' Manifestly, the purpose of section 5 was to exempt property owned by the corporasion, but it does not follow that the intention was to include in

that exemption all property owned by it used for purposes of the school."

We think there is force in this reasoning, and we are disposed to concur in the result arrived at.

It is contended by counsel for plaintiff in error that the words " said seminary," contained in section 5 of the charter, referred to the corporation created by the act and not to the school buildings and grounds, and that, therefore, the exemption necessarily exempted from taxation all the property against which the judgments below were rendered.

Here are two different constructions of the exemption clause, each of which might be maintained with some plausibility. That view which limits the range of the exemption to property used in immediate connection with the seminary might seem to many to be the correct one, while in the opinion of others, the broader claim of total exemption would be the best founded. The judges of the Supreme Court of Illinois have unanimously taken the former view, while counsel for the plaintiff in error very strongly and very ably has taken and maintained the other. We can ourselves see that a construction either way would not be clearly erroneous, or, at any rate, either construction would not be so obviously erroneous as to leave no doubt upon the question. In such cases we think the rule as to the construction of statutes of exemption from taxation should be applied, and as there may be room for reasonable doubt whether a total or only a partial exemption was meant, the partial exemption should alone be recognized. Great weight ought also to be attached to the decision of a state court regarding questions of taxation or exemption therefrom under the constitution or laws of its own State. As is said in *Wilson* v. *Standefer*, 184 U. S. 399, 412 :

" Especial respect should be had to such decisions when the dispute arises out of general laws of a State, regulating its exercise of the taxing power, or relating to the State's disposition of its public lands. In such cases it is frequently necessary to recur to the history and situation of the country in order to ascertain the reason as well as the meaning of the laws, and knowledge of such particulars will most likely be found in the

tribunals whose special function is to expound and interpret the state enactments."

We acknowledge and affirm the principle that this court in this class of cases must decide upon its own responsibility as to the existence and meaning of the contract, but in arriving at such meaning in a case like this, the decision of the state court is entitled to exercise marked influence upon the question this court is called upon to decide, and where it cannot be said that the decision is in itself unreasonable or in violation of the plain language of the statute, we ought, in cases engendering a fair doubt, to follow the state court in its interpretation of the statutes of its own State.

The case of *University* v. *People*, 99 U. S. 309, is no authority for the construction contended for by the plaintiff in error. In that case the charter provided "That all property, of whatever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes." The difference between the two provisions is intrinsic and material. What is lacking in the case at bar is present in the case cited, namely, a provision exempting all the property "owned by said corporation." In the case before us it is the property "belonging or appertaining to said seminary," and the word "belonging" is construed by the Supreme Court as not synonymous with "owned by," nor is the word "seminary" regarded in this connection as the equivalent of the word "corporation."

But the plaintiff in error contends that however correct the construction adopted by the state courts might be if founded upon general rules of construction pertaining to claims for exemption from taxation, it is plainly erroneous under the provision of section 6 of the charter, providing that the act "shall be deemed a public act, and shall be construed liberally in all courts for the purposes therein expressed."

To adopt the construction contended for by the plaintiff in error would call for a reversal of the rules otherwise prevailing in and governing claims for exemption from taxation. But it is nevertheless urged that if in any way the language of exemption can by a liberal construction be said to cover the whole

property owned by the corporation, such construction must be adopted by reason of the provisions contained in section 6. We think this is claiming entirely too much for the language of that section.

As is therein stated, the act must be construed liberally for the purposes therein expressed. What are those purposes? In this respect the word "purposes" in section 6 is synonymous with the word "object" in section 2, as we think, and we find that the object or purpose is stated in section 2, "To furnish instruction and the means of education to young men preparing for the gospel ministry, and the institution shall be equally open to all denominations of Christians for this purpose." It is for the accomplishment of this purpose or object that the act is to be liberally construed. If a question should arise regarding the meaning of the language "to furnish instruction or the means of education," and how far the words should be extended and what they should include, the words should be liberally construed as provided for in the sixth section, because to furnish instruction or the means of education is the expressed purpose or object of the act. So in regard to the powers of the board of directors as provided for in the charter; those powers should be liberally construed for the furtherance of the object stated in the charter. To do so would not violate any well-settled rule of construction and would nevertheless be sufficient in case of doubt to turn the decision in favor of a construction more liberal in its nature than might otherwise be properly adopted. But we do not think it was intended by the language of the sixth section to provide a complete overthrow of a canon of construction such as the one in question, which has obtained for so many years and has been so universally and so strictly adopted and adhered to by the courts of the whole country. We again resort to the language of the opinion of the Illinois court for the presentation of its own reasons for the somewhat strict construction of the exemption clause adopted by it. After stating that it should not be presumed that the legislature intended to exempt property from taxation, but such intention must appear affirmatively, and it will be strictly construed, and

that any ambiguities must operate against the parties who claim the exemption, the court (p. 181) continued :

" That laws exempting property from taxation are generally subject to these rules of construction is not seriously questioned, but counsel for appellee say said rules do not apply here, because by section 6 of the charter it is provided that the act ' shall be construed liberally in all courts for the purposes therein expressed.' We do not think this language was intended to or could be held to change or qualify the general rules of construction applicable to the section under consideration. Here the very question to be determined is, what is the purpose expressed in that section? And to say that liberal rules of construction must, under section 6, be applied in favor of the contention that all property belonging or appertaining to the corporation is exempt would be to beg the whole question. In determining what purpose is expressed in the section, resort must necessarily be had to the general rules for considering such laws. When that purpose is ascertained, liberal rules of construction, if necessary, are to be resorted to, to give effect to such purpose. . . . We think this case turns upon whether or not the words ' said seminary,' used in the fifth clause, should be given the meaning of ' said corporation.' In our opinion the application of the rules of construction above referred to do not warrant such a construction."

This is not such an unnatural, strained or unreasonable construction of the act as shows it to be erroneous, and while it might be otherwise construed so as to effect a total exemption, we are not prepared to hold that the state court so clearly erred as to call upon us to reverse its determination. We, therefore, adopt, though we admit with some hesitation, the views of the state court, which lead to an affirmance of the judgments.

*Affirmed.*

Mr. Justice White, with whom concur Mr. Justice Brown and Mr. Justice Holmes, dissenting.

The court, in stating the facts, refers to a previous opinion of

the Supreme Court of the State of Illinois, announced in a case between the same parties, involving a question of law like unto that which arises on this record. In that case, however, the Supreme Court of Illinois but reversed and remanded for a new trial, and hence the judgment was not final and not susceptible of being brought to this court to test the issues involving the constitutional right under the contract. After the record in the previous case reached the trial court the case was not further pressed by the plaintiff for such length of time as to cause it, under the Illinois statute, to be in effect abandoned. The question here now for review is not, therefore, controlled by the thing adjudged arising from the previous judgment. The court does not now decide to the contrary, but the matter is referred to by me lest a misconception be caused by the mention made of the subject in the opinion of the court.

I do not dispute the elementary proposition that exemptions from taxation are *stricti juris*, that is, not to be extended by implication. This, however, does not imply that a contract exemption is to be disregarded, simply because it may be possible for a subtle mind to suggest a possible doubt as to the exemption, however conjectural may be the assumption on which the doubt is rested. Nor does the rule mean that, because it is deemed that a particular contract exemption was an unwise one for the public interest, therefore the meaning of the contract is to be disregarded by a court in order to relieve the public from the burdens arising from the obligations of the contract. The rule, as understood by me, is this only, that the language from which an exemption is claimed to arise is to receive a literal construction, and is not to be extended so as to embrace a right not within the clear meaning of the contract. I do not, moreover, dispute the principle that where the contract which is asserted to have been impaired arises from a state law, it is the duty of the court, in case of doubt as to the meaning of the contract, to adopt the construction given to it by the state court. This rule does not imply that because the state court has decided against the contract right, therefore there is doubt and, hence, the resulting duty to affirm the action of the state court. If such were the case, the power of this court to review the action

JUSTICES WHITE, BROWN and HOLMES, dissenting.

of state courts concerning the alleged impairing of the obligations of a contract would be at an end wherever the contract took its origin in state law.  The significance of the rule is this, that if, fairly considering the issue of contract arising from the state law and its alleged impairment, this court, in the exercise of its independent judgment, remains in doubt, the decision below construing the state law will be allowed to solve the doubt, and thus secure the affirmance of the judgment.  The obligation on me as a member of the court is identical with that which rests on the court.

Coming to apply these rules to the case in hand, my mind has no doubt whatever as to the true meaning of the contract. Let me state what the contract is, in order to show why I do not doubt on the subject.

The first section of the act from which the contract arises creates a corporation for a religious and benevolent purpose, under the name of " The Board of Directors of the Chicago Theological Seminary."  The second section provides as follows :

" That the seminary shall be located in or near the city of Chicago.  The object shall be to furnish instruction and the means of education to young men preparing for the gospel ministry, and the institution shall be equally open to all denominations of Christians for this purpose."

The third section provides for the board of directors ; the fourth relates to the powers of the board ; and the fifth is as follows :

" That the property, of whatever kind or description, belonging or appertaining to said seminary, shall be forever free and exempt from all taxation for all purposes whatsoever."

The sixth section provides when the act shall take effect, and declares that it " shall be construed liberally in all courts for the purposes therein expressed."  Does the exemption covered by the fifth section relate to the Theological Seminary, the corporation created by the act, or does it apply only to a building to be erected by the corporation? is the question at issue.

It is admitted that if the exemption applies to the Theolog-

ical Seminary, the contract has been impaired and the judgment should be reversed. It is now decided that the exemption relates only to the seminary, that is, to the buildings, and, therefore, the judgment is affirmed. Now, giving to the words of exemption their natural meaning, and construing them strictly, there does not seem to me to be a doubt that they relate to the Theological Seminary incorporated by the act, and referred to as such in its first section. My mind does not enable me to see what else the words can mean. If it was intended merely to exempt a building or buildings, language could have been employed which would have aptly conveyed such meaning. Instead of doing this, the language used in the act—as I understand it—excludes such construction, since it declares that the exemption shall relate to the property "belonging or appertaining to said seminary;" the word "belonging" clearly referring to the corporation created by the act and on whom was conferred the power to own and possess property. Emphasis is added to this view when the scope of the exemption is borne in mind; since it embraces not a mere building or its accessories, but the property of whatever kind or description, thus describing and referring to the power to own and acquire property of every kind and description, real or personal, conferred on the Theological Seminary by the act. It is further to be observed, as throwing light upon the subject, that in the fourth section, immediately preceding the grant of the exemption, the particular buildings or place of learning to be constructed by the Theological Seminary is twice referred to as the institution, thus showing that the legislative mind had immediately before it when the exemption was granted the distinction between the Theological Seminary as a corporate entity to which the exemption was granted, and the institution to be constructed and supported by the Theological Seminary. I cannot, moreover, conceive that the words of the statute, immediately following the section granting the exemption, commanding that the provisions of the contract "shall be liberally construed in all courts for the purposes therein expressed," should have what seems to me their plain meaning, disregarded, by causing them to refer, not to the act as a whole,

but to some particular provision in it. I find nothing in the language which lends itself to such a view.

I therefore dissent.

I am authorized to say that Mr. Justice Brown and Mr. Justice Holmes concur in this dissent.