**BANK OF HAWAII, Limited, v. WILDER, Tax Assessor.**

(Circuit Court of Appeals, Ninth Circuit. November 2, 1925. Rehearing Denied December 7, 1925.)

No. 4521.

**1. Taxation ⬤═130—Bank's liability for taxation on cash on hand not affected by excess of territorial deposits over cash on hand.**

Prior to passage of Act No. 117 of Hawaii of 1923, a bank *held* liable for taxation on all moneys on hand January 1, without regard to the fact that on that date territorial deposits amounted to a sum in excess of such moneys on hand, for the provision Rev. Laws Hawaii 1915, § 1165, that moneys of territory deposited in bank should be deemed to be in territorial treasury, attached to the funds a status for purpose only of accounting, and did not make the bank a bailee of, rather than debtor for, such funds, and hence section 1246, exempting from taxation property belonging to the territory, was inapplicable.

**2. Taxation ⬤═203—Exemption from taxation under legislative authority cannot exist by implication.**

Exemption from taxation under legislative authority must be plainly and unmistakably granted; it cannot exist by implication only, doubt thereof being fatal to claim.

**3. Statutes ⬤═219—Omission of taxing officers to assess and tax property held not to take from courts power to construe law under which exemption was claimed.**

Omission of taxing officers to assess and tax deposits representing territorial money in bank, where such omission was not pursuant to uniform and continuous practice, did not lessen duty of their successors, or take from courts power to construe law under which bank's exemption from taxation was claimed.

In Error to the Supreme Court of the Territory of Hawaii; Perry, Judge.

Action by Charles T. Wilder, Tax Assessor for the First Taxation Division of the Territory of Hawaii, against the Bank of Hawaii, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

Smith, Warren, Stanley & Vitousek, Louis J. Warren, Frear, Prosser, Anderson & Marx, and Walter F. Frear, all of Honolulu, Hawaii, and Chickering & Gregory, of San Francisco, Cal., for plaintiff in error.

William B. Lymer, Atty. Gen., and H. R. Hewitt, Second Deputy Atty. Gen., for defendant in error.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

HUNT, Circuit Judge. The Bank of Hawaii asks reversal of a judgment entered against it, pursuant to a decision of the Supreme Court of Hawaii, in favor of Wilder, Tax Assessor, for $23,740.88, without interest, and for costs.

On May 1, 1911, the treasurer of Hawaii agreed with the bank to deposit money belonging to the territory, under authority of an act of the territory (Session Laws 1909, Act 123), entitled "An act to authorize the deposit of territorial moneys in banks," as amended by Act 131 of the Session Laws of 1911 (chapter 87, Revised Laws of Hawaii 1915). The bank was to pay interest on the average daily balance of territorial funds at the rate of 2 per cent. per annum. Security was furnished as required by the statute, and deposits were received and commingled and used as were the deposits of private parties. On January 1st of each year there were balances on deposit to the credit of the territory, and on January 1, 1923, such balance was $1,075,353.33. The bank then had $774,075 in cash, which sum was part of all moneys deposited with it as general and special deposits by all its customers, including the territory of Hawaii and the city and county of Honolulu.

In January, 1910, and in 1919 the respective Attorneys General of the territory advised that the deposits made by the territory remained moneys of the territory, although on deposit, and that such moneys were not subject to taxation, and tax assessors did not tax the moneys on hand in the bank prior to January 1, 1922, except only when and in so far as the moneys were in excess of all deposits then standing to the credit of the territory. For assessment purposes for 1922, Lewis, then treasurer, notified the bank that he did not believe the statute exempted in whole the territorial deposits in the bank, that the bank should deduct from its total cash on hand an amount which bore the same ratio to the total amount of cash

on hand as was borne by the amount of territorial deposits to the total amount of all deposits of the commercial branch of the bank on that date, and should pay taxes on the balance of its cash on hand. The bank agreed to this, and the treasurer proposed that, because of the practice that had been followed, the bank should pay taxes on 15 per cent. of its total cash on hand on January 1, 1922, and thereafter pay on the exact proportion as above suggested. The bank agreed, and paid taxes on 15 per cent. of its total cash on hand on January 1, 1922, and on that date the territorial deposits in the bank exceeded the amount of cash on hand in the bank.

In December, 1922, the Attorney General advised that the bank was liable for taxes on all moneys on hand on the 1st of January of each year, regardless of the amount of deposits to the credit of the territory in the bank on the taxation dates, and the Bank of Hawaii, acting upon that opinion, in making its tax return for January 1, 1923, did not follow the advice of Lewis, and did not return any money in its possession on that date as being moneys on hand, because, although it had on hand a balance of all deposits of $774,075, it had deposited with it, under the provisions of the law of Hawaii, money of the territory aggregating $1,017,-353.33. In April, 1923, the assessor notified the bank of his assessment of $23,740, that being properly chargeable against $774,-075, provided the assessor's contention was correct.

The contention of the bank is that under Act 123 of the Session Laws of 1909 and amendments thereto, and construction thereof, up to the passage of Act 117 of 1923, it had no money on hand on January 1, 1923, which was liable to taxation, because the moneys of the territory then on deposit exceeded the aggregate amount of all money then in the bank's possession. On the other hand, the assessor's position is that the bank is liable for taxation on all moneys on hand January 1, 1923, $774,075, without regard to the fact that on that date territorial deposits amounted to $1,017,353.33.

[1] Section 1166, chapter 87, of the Revised Laws of Hawaii 1915, provided that not more than 75 per cent. of any money in the territorial treasury might be deposited in banks, and any sum so deposited should be deemed to be in the territorial treasury. Section 1246, Revised Laws Hawaii 1915, exempts from taxation real and personal property belonging to the territory. Act 117 of 1923, amending section 1165, supra, effec-

tive April 30th of that year, provided that not more than 90 per cent. of the money in the territorial treasury may be deposited by the treasurer to the credit of the territory in such banks as the treasurer, with the approval of the Governor, may select, "and any sum so deposited shall be deemed to be in the Territorial treasury," etc., provided that, "for taxation purposes in returning its cash balance, a bank shall be allowed to deduct an amount not greater than that represented by the ratio that its government deposits bears to its total commercial deposits." Section 1165 is part of chapter 87, which has to do with deposit of money in banks, being part of title 13 Revised Laws of Hawaii 1915, entitled "Treasury."

The general purpose of the legislation was to define the duties of the treasurer, and to authorize that official to deposit moneys in banks where security shall be given and interest may be collected for the benefit of the public treasury. The provision that moneys deposited in the bank shall be deemed to be in the territorial treasury was, we think, properly regarded by the Supreme Court as attaching to the funds a status for the purpose of accounting—to relieve the official of having the actual money in his manual custody or in the safe in his office. It was sufficient for him to report the sums deposited as cash on hand in the treasury, and under section 1171 such bank certificates of deposit as he has in his possession are to be treated and counted as actual cash. Sums "so deposited" are moneys deposited in the depositary by the treasurer. But deeming such moneys to be in the territorial treasury does not make the bank a bailee of the funds, nor affect the usual relationship between depositor and depositary (New York, etc., Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380), whereby deposits that are commingled and used as are the deposits of private persons become loans to the bank with title in the bank (Thompson v. Riggs, 5 Wall. [72 U. S.] 663, 18 L. Ed. 704; Bank of Republic v. Millard, 10 Wall. [77 U. S.] 152, 19 L. Ed. 897).

[2] In the written contract between the bank and the treasurer there is no expression that the money was to be exempt from taxation, and, were it assumed that the treasurer had the power to make an agreement of exemption, the rule is elementary that an exemption from taxation under legislative authority "must be plainly and unmistakably granted; it cannot exist by implication only; a doubt is fatal to the claim." Theological Seminary v. Illinois, 188 U. S. 662, 23 S. Ct. 386, 47

L. Ed. 641; Met. St. R. Co. v. New York, 199 U. S. 1, 25 S. Ct. 705, 50 L. Ed. 65, 4 Ann. Cas. 381. It is apparent, too, that the bank has not always claimed exemption, for after 1922 it agreed to Treasurer Lewis' proposition, which was founded upon liability materially variant from the rulings of Lewis' predecessors, and is also quite opposed to the position taken in this proceeding.

[3] Finally, there is the argument that the construction adopted for some years by territorial treasurers and executive officers, and not changed by legislation evincing dissent, justifies the interpretation contended for by the bank. Let it be that, if such construction of exemption had been uniform and continuous, resort to long-standing executive practice might be almost persuasive. But, where there have been differing constructions and lack of uniformity, the construction put upon the statute by the territorial Supreme Court should have very great weight. Omission of the taxing officers to assess and tax property did not lessen the duty put upon their successors, or take from the courts the power of construction of the law under which the exemption was claimed.

The judgment is affirmed.