THOMAS E. BASHAM CO. v. LUCAS, Collector of Internal Revenue.

District Court, W. D. Kentucky, at Louisville. July 25, 1927.

1. Statutes ⬅️➡️228—Proviso or exception in statute must be strictly construed, and burden of proof is on one claiming benefit thereof.

Where the enacting clause of a statute is general in its language and objects, a proviso or exception therein must be strictly construed and will not be permitted to take any case out of the enacting clause which does not clearly fall within its terms, and any one claiming the benefit of such proviso or exemption must clearly and unmistakably establish his rights to its benefits, and this principle applies to taxing statutes.

2. Internal revenue ⬅️➡️7(28)—Corporation must clearly and unmistakably establish its asserted right to be classified as "personal service corporation" (Revenue Act, § 200 [Comp. St. § 6336⅛a]).

Corporation seeking to be classified as a "personal service corporation" under Revenue Act 1918, § 200 (Comp. St. § 6336⅛a), and thereby procure preferential treatment as against other corporations, must clearly and unmistakably establish its right to such classification by proving that its income is primarily due to the activities of its principal owners or stockholders, that the principal owners or stockholders are themselves regularly engaged in the active conduct of corporation's affairs, and that capital, whether invested or borrowed, is not a material income-producing factor, and failure to clearly and satisfactorily establish any one of such requisites is fatal to the claim.

3. Internal revenue ⬅️➡️7(28)—Whether corporation is "personal service corporation" depends on facts of particular case (Revenue Act 1918, § 200 [Comp. St. § 6336⅛a]).

Whether a corporation is a "personal service corporation," within Revenue Act 1918, § 200 (Comp. St. § 6336⅛a), must be determined on the facts of the particular case.

4. Internal revenue ⬅️➡️7(28)—Corporation engaged in advertising agency business, deriving substantial profits from cash discounts and invested capital, held not "personal service corporation" (Revenue Act 1918, § 200 [Comp. St. § 6336⅛a]).

Where corporation engaged in advertising agency business and having outstanding capital stock amounting to $14,000, $8,000 of which represented good will, during the taxable year borrowed $12,500 to $15,000 and derived considerable revenue from cash discounts by using its funds to pay bills of publishers for advertising for which it was primarily liable, and nearly 25 per cent. of its net profit was derived from use of capital in connection with cuts and drawings, held that corporation was not a "personal service corporation" within Revenue Act 1918, § 200 (Comp. St. § 6336⅛a), though its principal stockholders and owners regularly engaged in active conduct of its affairs.

At Law. Action by the Thomas E. Basham Company against Robert H. Lucas, Collector of Internal Revenue for the District of Kentucky. Judgment for defendant.

Beckham, Hamilton & Beckham and Elwood Hamilton, all of Louisville, Ky., for plaintiff.

T. J. Sparks, Dist. Atty., of Greenville, Ky., A. W. Gregg, Gen. Counsel, and John H. Pigg and John A. McCann, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

DAWSON, District Judge. The sole question involved in this case is whether the plaintiff, a corporation engaged in the advertising agency business, was entitled to be classified as a personal service corporation under the provisions of section 200 of the Revenue Act of 1918 (Comp. St. § 6336⅛a). The applicable part of that section reads as follows:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive."

[1] In determining whether or not the plain-

tiff is entitled to classification under this section, a well-settled rule of statutory construction must be kept in mind, and that is that, where the enacting clause of a law is general in its language and objects (as is the Revenue Act of 1918), and a proviso or exception is introduced into the act, that proviso or exception must be strictly construed, and will not be permitted to take any case out of the enacting clause which does not clearly fall within its terms. Any one claiming the benefit of such proviso or exemption must clearly and unmistakably establish his right to its benefits. The rule is well expressed in the case of United States v. Dickson, 15 Pet. (40 U. S.) 141, 10 L. Ed. 689, in the following language:

"We are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that, where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words as well as within the reason thereof."

Again, in the case of Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807, the rule was announced by the Supreme Court in this language:

"The general rule of law is that a proviso carves special exceptions only out of the body of the act; and those who set up any such" special "exception must establish it, as being within the words as well as the reason thereof."

This principle is universal in its application. It is true that the Supreme Court has repeatedly held that taxing statutes, whether general or special, in case of ambiguity or doubt, are construed strictly in favor of the citizen, but the cases which have laid down that rule were dealing with the question of whether or not the citizen was embraced within the enacting clause and general objects of the law, and not with the question of whether a citizen who would otherwise come within the language of the enacting clause was excepted therefrom by reason of a proviso or an exemption introduced into the act. On the contrary, the Supreme Court has repeatedly held that a taxpayer embraced within the general language of the enacting clause, and within the general objects of a taxing statute, cannot escape taxation by claiming the benefits of a proviso or an exemption contained in the statute, unless he plainly and unmistakably establishes his right thereto. See Tucker v. Ferguson, 22 Wall. 527, 22 L. Ed. 805; New Orleans City & Lake R. Co. v. New Orleans, 143 U. S. 192, 12 S. Ct. 406, 36 L. Ed. 121; Bank of Commerce v. Tennessee, 161 U. S. 134, 16 S. Ct. 456, 40 L. Ed. 645; Chicago Theological Seminary v. Illinois, 188 U. S. 662, 23 S. Ct. 386, 47 L. Ed. 641; See, also, Commercial Health & Accident Co. v. Pickering (D. C.) 281 F. 539; Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410.

[2, 3] Now in this case we have presented a corporation fairly embraced within the enacting clause of the act. It seeks to be excepted therefrom and to be treated as belonging to a special class by virtue of the provisions of section 200. As I conceive the law to be, before it can be classified as a personal service corporation under that section, and thereby secure preferential treatment as against other corporations, it must clearly and unmistakably establish its right to such classification. Any substantial doubt as to its right to such classification is fatal to its claim.

It is apparent that a question of fact is presented in each case in which a corporation seeks to claim the benefits of section 200, and each case must be determined by its own particular facts. Before a corporation is entitled to the benefits of that section, it must establish beyond substantial doubt: (1) That its income is primarily due to and the result of the activities of its principal owners or stockholders; (2) that the principal owners or stockholders are themselves regularly engaged in the active conduct of the affairs of the corporation; (3) that capital, whether invested or borrowed, is not a material income-producing factor. Failure to clearly and satisfactorily establish any one of these three requisites is fatal to the claim of the corporation.

[4] In this case it has been established, clearly and satisfactorily, that the plaintiff's principal owners and stockholders are themselves regularly engaged in the active conduct of the affairs of the corporation, but I am unable to say that it has been clearly and satisfactorily established that the income of the corporation can be ascribed primarily to their activities, nor has it been clearly and satisfactorily established that capital has not played a material part in producing the corporate income. These two propositions are closely related, because, if capital is a material income-producing factor, it necessarily follows that the income of the cor-

poration cannot be ascribed primarily to the activities of its stockholders.

I am bound to say that the testimony in this case leaves me in grave doubt and my mind in confusion as to the amount of capital used in the business. The plaintiff's witnesses contend that the actual cash paid in for capital stock was approximately $2,000. The authorized capital stock of the corporation was $25,000. In 1912, at the time of incorporation, $10,000 of this stock was issued, $8,000 representing good will of the business previously operated by Thomas E. Basham as an individual, and $2,000 representing cash and physical assets turned over to the corporation by Mr. Basham. At the beginning of the taxing year 1919, the outstanding capital stock was $14,100. I cannot see how any additional stock could have been issued for good will, and from the entire record I think it is reasonably clear that the additional $4,100 worth of stock represented cash paid in by the other stockholders, or notes executed by them for stock.

During 1919 the plaintiff borrowed at five different times from $2,500 to $3,000, or an aggregate of between $12,500 and $15,000. Just what part this borrowed money and the paid-in capital stock played in the production of income for that year I am left to guess. Furthermore, it is very apparent from this record as a whole that considerable revenue was derived by the taxpayer from using its funds to pay the bills of the publishers as they became due, thereby securing a substantial discount for prompt payment. It is true the taxpayer contends that it was under no legal obligation to pay the publisher for the advertising placed with such publisher through the agency of the plaintiff, in default of payment on the part of the advertiser, but it admits that it was its uniform practice to pay such bills in event of default on the part of the advertiser, in order that it might maintain its standing and the good will of the advertising medium. If a material part of its income was derived from this practice, it seems to me that it would be of no importance whether the plaintiff was under any legal obligation to pay these bills or not. It would be income derived from the use of capital, nevertheless.

There is nothing in this record, however, justifying the contention of the plaintiff that it was not directly liable to the publisher. On the contrary, I think the record conclusively shows that the plaintiff was directly liable to the advertising medium for all advertising inserted therein through the agency of the plaintiff. There is filed with the deposition of Mr. Basham a copy of the form of order used by the plaintiff in placing advertising for its customers with different advertising mediums. I am thoroughly satisfied that such an order as the one filed made the plaintiff directly liable to the advertising medium with which the order was placed, unless it is shown that there was a settled custom and practice in the trade exempting an advertising agency such as the the plaintiff from personal liability, on orders such as the one filed as an exhibit herein, and that the plaintiff and the different advertising mediums with which it placed advertising orders contracted with this custom in mind. The record does not satisfactorily show any such custom. The manner in which the company kept its books would indicate that the company recognized its direct liability for advertising placed with different publishing concerns, because it carried on its books as a liability, under the head of "Accounts Payable," the amount which it was to remit to the advertising mediums, and as an asset, under the head of "Accounts Receivable," the amount which it expected to collect from the advertisers. It is true the plaintiff undertakes to explain this method of bookkeeping as being merely a matter of convenience, but this explanation is not convincing, coming as it does long after the entries had been made, and when considered in connection with plaintiff's admission that it always paid the publisher, even though the advertiser defaulted. Moreover, Mr. Basham in his testimony practically admitted that the publisher looked to the plaintiff for the payment of these accounts. If I am correct in my conclusion that the plaintiff was primarily liable for the payment of the advertising placed by it for its customers, then capital was a material factor in the production of that portion of the income of the plaintiff represented by the difference between what it had to pay the publishers and what it collected from the advertisers, and the fact that plaintiff in most instances collected from the advertiser before it was required to remit to the publisher does not, in my view, change the situation.

There is another item of income attributable to the use of capital disclosed by the record, viz., the profit derived by the plaintiff on drawings, electrotypes, etc. According to the record, and particularly the testimony of Mr. Basham, this work was done, either in plaintiff's office or by some art organization with which the plaintiff had a separate, independent contract. The plaintiff was liable for this work, and payments

were made directly to the art organization in the same way as any other account is ordinarily paid, and the plaintiff in turn charged the advertiser a profit on what it had cost to have this work done. This difference, in 1919, amounted to a profit of $3,496.15. There can be no escape from the conclusion that this profit was derived from the use of capital. The total net income for 1919 was $14,019.01. Therefore the profit derived from the use of capital in connection with cuts and drawings was nearly 25 per cent. of the total net profit for that taxable year.

In view of this fact, and in view of the failure of the plaintiff to show how much profit was derived from taking the benefit of cash discounts when it paid out of its own resources bills which the advertisers failed to promptly pay, and in view of my conclusion that the plaintiff was primarily and directly liable for all the advertising placed by it under orders such as that filed as an exhibit in this case, I cannot say that it has been made to clearly and satisfactorily appear that capital was not a material factor in producing the income for the year 1919.

It follows, therefore, that plaintiff must be denied the relief prayed for, and a judgment conforming to the views herein announced may be prepared and presented for entry.