## ALLIS v. LA BUDDE et al.

### Civ. A. No. 190.

District Court, E. D. Wisconsin.

July 17, 1941.

**60**

Theodore C. Bolliger, of Milwaukee, Wis. (Miller, Mack and Fairchild, of Milwaukee, Wis., of counsel), for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Carl J. Marold, Sp. Assts. to Atty. Gen., and B. J. Husting, U. S. Dist. Atty., of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This is an action to recover certain federal income taxes paid by plaintiff which were assessed against her income for the years 1934 and 1935. Charles Allis, the husband of plaintiff, died on July 22, 1918. At the time of his death there were outstanding, and in force, six insurance policies on his life. The plaintiff was named as the sole beneficiary. The total face value or principal sum of said policies was $251,000. Previous to Mr. Allis' death, he had exercised options offered in each of the policies, providing that upon his death the insurer's liability under each of said policies should be discharged by payments to the beneficiary of monthly installments for ten years certain, and continuously thereafter during the life of the beneficiary, the amount of said installments to be governed by the age of the beneficiary at the death of the insured. Under the terms of the option, the plaintiff had no right of revocation or modification of the method of payment.

After the death of Mr. Allis, the insurance companies commenced making monthly payments to the plaintiff. Including those payments made through the year 1933, the plaintiff had received the total sum of $323,795.17. Under the insurance policies in question, the plaintiff received the sum of $21,039.81 in the year 1934, and $21,030.17 in the year 1935. The small difference is accounted for by a dividend payment on one policy in 1934 amounting to $33.57, and a similar dividend in 1935 amounting to $23.93. The plaintiff did not pay income taxes on such payments for the years in question. The Commissioner of Internal Revenue assessed the deficiencies in taxes and interest, which are the subject of this action. The amounts so assessed were paid by the plaintiff under protest, and claims for refund were filed but not allowed.

Whether such payments are taxable depends upon the proper interpretation of Sec. 22(b) (1) of the Revenue Act of 1934, 48 Stat. 686, 687, 26 U.S.C.A. Int. Rev.Code, § 22(b) (1), which reads as follows:

"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this title [chapter]:

"(1) *Life insurance.* Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income;"

It is admitted by plaintiff that Treasury Regulations 86, promulgated under the Revenue Act of 1934 (Art. 22(b) (1)-1), cover the situation under consideration, and that pursuant thereto the payments in question are taxable. However, plaintiff strongly contends that this regulation is contrary to the Congressional intent in enacting the statute quoted, and therefore the regulation has no validity.

The defendant contends that the death of the insured fixed the liability of each insurance company and terminated the insurance features of the contract; that such further amounts that the beneficiary might receive were due to other circumstances which did not relate to that death; that the face or principal amounts of the policies are the only sums that are within the statutory exemption; and that the additional amounts received by the beneficiary, by reason of lapse of time or by reason of the insurance companies' retention and use of the funds, is properly taxable.

It is a well-settled rule that an exemption statute must be narrowly construed. Cornell v. Coyne, 192 U.S. 418, 24 S.Ct. 383, 48 L.Ed. 504; Heiner v. Colonial Trust Company, 275 U.S. 232, 48 S.Ct. 65, 72 L.Ed. 256; Chicago Theological Seminary v. Illinois, 188 U.S. 662, 23 S.Ct. 386, 47 L.Ed. 641. In the latter case, the court said (188 U.S. page 672, 23 S.Ct. page 387, 47 L.Ed. 641): "The rule is that, in claims for exemption from taxation under legislative authority, the exemption must be plainly and unmistakably granted; it cannot exist by implication only; a doubt is fatal to the claim."

Prior to the taxable year 1934, plaintiff had received as payments nearly $73,000 in excess of the face amounts of the

insurance policies. The insurance companies were enabled to make such payments because they had retained the $251,000 and had the use thereof since the date of the death of Mr. Allis. The payments to plaintiff in excess of the face amount of the policies constitute either interest or some other increment which accrued upon the funds retained by the insurance companies.

██ The statute in question provided that if the amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in the gross income. This does not necessarily mean that the insurance policy must designate by name that a portion or segment of the mixed receipts is interest. Substance rather than form is controlling in the field of taxation. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Helvering v. Tex-Penn Oil Company, 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755.

I would have no hesitancy in determining that it was the intention of Congress to tax the payments in question as income, were it not for the decisions of the Circuit Courts of Appeals for the First and Second Circuits. Commissioner v. Winslow, 1 Cir., 113 F.2d 418, 133 A.L.R. 405; Commissioner v. Bartlett, 2 Cir., 113 F.2d 766; and Commissioner v. Buck, 2 Cir., 120 F.2d 775, decided on June 6, 1941. The defendant seeks to distinguish these cases on their facts, but fundamentally they are the same.

██ It is, of course, possible to broadly interpret the phrase "amounts received under a life insurance contract", as was done in those cases, so as to extend tax exemption to the income increment as well as the capital in life insurance optional payments. However, such interpretation is contrary to the general rule of construction of exemption statutes. It is contrary to what I firmly believe was the intent of Congress. See criticism of the decisions in the Winslow and Bartlett cases, supra, in 50 Yale Law Journal 322 and 39 Michigan Law Review 493.

Congress undoubtedly recognized that it must necessarily confine taxation to income, and that such portion of option payments which was made up of the principal amount of the policy could not be taxed under the income tax law. However, that fact is no reason to construe any Congressional intent that the interest or income segment of the mixed payments should be exempted as well as the payments which came from principal.

Sec. 22(b) (2) provides an arbitrary measure for the increment on a commercial annuity. Congress specifically restricted its exclusions from gross income to the non-taxable segment of mixed receipts. It was the undoubted general purpose of Congress to limit the exclusions from gross income to capital alone.

There seems to be no serious dispute as to the correctness of the decisions in United States v. Heilbroner, 2 Cir., 100 F.2d 379, and Kinnear v. Commissioner, 20 B.T.A. 718. In each case the policy provided that settlement should be made by payments of annual sums to the taxpayer, which represented interest on the face amount of the policies, and upon death of the taxpayer, the principal sum was to be paid to other beneficiaries. Both cases held that the amounts paid to the taxpayer were not exempt. In the instant case, the taxpayer received the principal sum of the policies as well as the interest which was earned.

In the recent case of Helvering v. Le Gierse & Bankers Trust Company, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996, the question was whether certain proceeds on a so-called insurance policy were "receivable as insurance" within the meaning of Sec. 302 (g) of the Estate Tax Law, Revenue Act 1926, 26 U.S.C.A. Int.Rev.Code, § 811(g). After pointing out that historically and commonly insurance involves risk-shifting and risk-distributing, the court held that it could not find such an insurance risk in the contracts between decedent and the insurance company.

The insurance risk, as defined by the Supreme Court, may well be said to have ceased in the instant case at the time of the death of the insured. When the options came into operation, the liability of the insurance companies had been fixed. The only risk that remained was that the sums which the insurance companies retained might not earn the increment necessary to make the excess payments.

██ With due deference to the Winslow, Bartlett, and Buck decisions heretofore mentioned, I am forced to hold that under a proper interpretation of the intent of Congress in enacting Sec. 22(b) (1), the 1934 and 1935 payments received by plaintiff were taxable.